UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW E. HORTA individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:20-cv-02659-SEB-MJD ) |
| INDY TRANSPORT, INC., | ) ) |
| Defendant. | ) |

**ORDER GRANTING THE PARTIES' JOINT MOTION**
**FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELEASE**

Named Plaintiff Matthew Horta ("Named Plaintiff"), Opt-In Plaintiffs Nathan Bass, William Honey, Jeremey Lovelace, and J. Blake Helt (collectively, the "Opt-In Plaintiffs") (Named Plaintiff and Opt-In Plaintiffs collectively, the "Plaintiffs") and Defendant Indy Transport, Inc. (all of the foregoing, collectively, the "Parties") jointly sought final certification of the collective action and moved the Court to approve a settlement they have reached in the above-captioned matter concerning Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Indiana Wage Claims Statute ("Indiana Claims"), I.C. 22-2-9-1, *et seq.* (Doc. 43)

For the following reasons, the Court enters a final certification of the FLSA collective action and approves the Settlement Agreement (Doc. 43-1) and its terms as fair, reasonable, and sufficient and directs that the Complaint be dismissed with prejudice and in full and final discharge of any and all of Plaintiffs' released claims, but with the Court retaining jurisdiction to enforce the terms of the settlement. The Court further approves the requested attorneys' fee award to Plaintiffs' counsel and directs that the gross settlement amount be distributed in

71526329v1

accordance with the terms of the Settlement Agreement. (Doc. 43-1)

## PLAINTIFF'S CLAIMS

On October 13, 2020, the Named Plaintiff filed the above-captioned lawsuit alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Indiana Wage Claims Statute ("Indiana Claims"), I.C. 22-2-9-1, *et seq.* [Doc. No. 1] (the "Complaint"). Named Plaintiff alleged, generally, that Indy Transport has been systematically underpaying wages and overtime wages to Named Plaintiff and similarly situated dump truck drivers in two ways. First, Named Plaintiff alleged that Defendant pays its dump truck drivers at an hourly rate of pay, but Defendant has been substantially underpaying wages to all dump truck drivers by failing to pay on a continuous workday basis. Second, Named Plaintiff alleged that Defendant is and has been underpaying overtime compensation to its hourly-paid drivers on a systematic, class-wide basis as a result of an unlawful practice by which Defendant is 1) failing to include work hours it calls "Non-Prod Time" as work hours included in the determination of whether or not dump truck drivers worked overtime (more than 40 hours) in a work week, and 2) paying a very small amount of money without stating the number of hours worked in the category of "Non-Prod Time," but failing to include that "Non-Prod Time" wage in the calculation of employees' regular rates of pay and, in so doing, failing to include all earned wages in its calculation of its employees' overtime rate of pay.

Named Plaintiff asserted his first cause of action under the FLSA for allegedly unpaid overtime wages and sought to represent himself and all other similarly situated current and former hourly-paid dump truck drivers employed by Defendant who he alleged were denied full overtime compensation under the same circumstance as he alleged. (the "FLSA Collective"). Named Plaintiff also asserted Indiana Claims, and brought that cause of action on behalf of himself.

3

## DEFENDANT'S RESPONSE

On November 6, 2020, Defendant filed its Answer and Defenses to the Complaint, denying all liability [Doc. No. 8]. On January 13, 2021, Defendant filed its Amended Answer and Defenses to the Complaint, again denying all liability. [Doc. No. 28] Defendant denied any FLSA violations, any Indiana Wage Claims Statute violations, and that it has been systematically underpaying wages and overtime wages to this plaintiff or any other dump truck drivers. First, Defendant denied that it has failed to pay any driver on a continuous workday basis. Defendant's drivers record their own time, including signing off on the time that they record each day. Second, Defendant denied wrongdoing associated with its practice of paying drivers separate hourly and overtime rates based upon separate types of work performed by the drivers.

Defendant also asserted various additional defenses, including but not limited to, a statute of limitations bar for some claims; denied that any violations of the FLSA were willful; asserted that any failure to pay Named Plaintiff or any Opt-In Plaintiff overtime was not compensable under the FLSA because it was for *de minimis* time; and asserted that any claims asserted by Named Plaintiff or any Opt-In Plaintiff was barred because the work performed falls within exemptions, exclusions, exceptions, or credits provided for in Section 7 of the FLSA, 29 U.S.C. § 207, including but not necessarily limited to, those seen in 29 U.S.C. § 207(e)(5)-(6)-(7) and 29 U.S.C. § 207(g)(2).

## THE COURSE OF THE CASE

On April 28, 2021, the Court granted the joint motion for conditional certification of an FLSA collective action. [Doc. 30] The Court conditionally certified a collective group of all present and former hourly dump truck drivers who worked for Defendant at any time from October 13, 2017 to present. [*Id.*] The Court also approved the notice documents and authorized Named Plaintiff and his counsel to disseminate the notice as set forth in the joint motion. [*Id.*]

On May 25, 2021, a Consent to Become a Party Plaintiff in a Collective Action Under the FLSA was filed by and on behalf of J. Blake Helt. [Doc. 35] On May 28, 2021, a Consent to Become a Party Plaintiff in a Collective Action Under the FLSA was filed by and on behalf of Jeremey Lovelace. [Doc. 36] On June 3, 2021, Consents to Become a Party Plaintiff in a Collective Action Under the FLSA were filed by and on behalf of William Honey and Nathan Bass. [Doc. 38] No other Consent forms were filed prior to the closing of the sixty-day notice period.

On September 29, 2021, the Parties and their respective counsel engaged in a mediation before United States Magistrate Judge Mark Dinsmore, culminating in their agreeing to compromise and settle all claims asserted by: Named Plaintiff and the four Opt-in Plaintiffs (collectively, "Claimants") pertaining to, arising from, or associated with their FLSA claims and Named Plaintiff's state law claims, including but not limited to, the allegations in the Complaint, and as set in the Settlement Agreement. The terms of the proposed settlement are set forth in a "Settlement Agreement and Release" ("Settlement Agreement" or "Settlement" or "Agreement"), which the Parties attached to their Joint Motion For Approval of the Settlement Agreement and Release at Doc. 43-1.

## THE SETTLEMENT AND ITS TERMS

The Parties have agreed to settle this case on the terms and conditions set forth in the Agreement in recognition that the outcome of the case is uncertain and that achieving a final result through litigation would require substantial additional risk, discovery, time, and expense. Defendant continues to deny all charges of liability or wrongdoing and deny that it failed to properly compensate Claimants, but it desires to settle the case and thus avoid the expense, risk, exposure, inconvenience, and distraction of continued litigation.

71526329v1

In exchange for the consideration set forth in the Agreement, Claimants agree to fully release Defendants from any and all causes of action set forth in the Complaint as of September 29, 2021, the date they signed or authorized their signatures upon the Agreement. The Parties agreed to file a Joint Motion for Approval of FLSA Settlement and Release, asking that this Court: approve the Settlement and its terms as fair, reasonable, and sufficient; approve the requested attorneys' fee award to Claimant's counsel; and direct that the Gross Settlement Amount be distributed in accordance with the terms of the Settlement Agreement.

Pursuant to the Settlement Agreement, Defendant agrees to pay the gross settlement amount of $20,000 as follows:

a. Payment of Claimants' Attorneys' Fees. The gross amount of $6,852.08 will be paid as directed to Claimants' Counsel, Robert P. Kondras, Jr., and reported on IRS form 1099. Costs will be paid from this sum. The net attorney's fees shall be evenly divided between Attorney Kondras and Attorney Aaron J. Williamson. Attorney Kondras shall be responsible for paying Attorney Williamson's fees after deposition the fee check into his Trust Account.

b. Payment to Claimants Subject to W-2. The gross amount of $13,147.92 will be paid to the Claimants, less applicable, legally required taxes, withholdings and deductions from the gross amount of payments reported on IRS form W-2 for checks issued to Claimants for alleged unpaid wages and for their general release, distributed as follows:

   i. Matthew Horta: $7,956.36, which will be reported on an IRS form W-2.

   ii. Nathan Bass: $546.48, which will be reported on an IRS form W-2.

    iii.    William Honey: $409.86, which will be reported on an IRS form W-2.

    iv.    Jeremey Lovelace: $1,229.58, which will be reported on an IRS form W-2.

    v.    J. Blake Helt: $3,005.64, which will be reported on an IRS form W-2.

The Settlement Agreement contains a number of Additional Terms, including but not limited to that Claimants agree that they will not apply for or seek contractual opportunities with Defendant.

## FINAL CERTIFICATION OF COLLECTIVE ACTION

Where, as here, "the parties reach settlement after a court has conditionally certified a collective class, the court still must make some final class certification before approving a collective action settlement." *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 993 (N.D. Ind. 2010) (internal quotations, citation omitted).  As explained in our April 28, 2021 Order Granting Join Motion for Conditional Certification of a FLSA Collective Action and Approval of Proposed Collective Action Notice, Plaintiffs have succeeded in showing that the proposed collective members are similarly situated based on evidence that they performed substantially similar duties and were all subject to the same allegedly unlawful employment policies.  Dkt. 30 at 4.

The parties now jointly assert that no relevant circumstances have changed since we made that finding, and additionally, that, other than its statute of limitations defense, Defendants' primary defenses would have been applicable to and asserted toward all Plaintiffs in a similar manner. Accordingly, final certification of the collective action is appropriate at this time.  *See Clemens v. Stericycle*, No. 1:15-cv-01432-SEB-MJD, 2016 WL 1054605, at *2 (S.D. Ind. Feb. 17, 2016) (Dinsmore, J.), *report and recommendation adopted*, 2016 WL 1045550, at *1 (S.D. Ind. Mar. 15,

2016) (Barker, J.) (holding that collective action plaintiff must show that collective members were "victims of a common policy or plan"); *Burkholder*, 750 F. Supp. 2d at 994 (concluding that final certification is appropriate where "there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies," and the defendants' "defenses would apply to *all* Plaintiffs"). Thus, we hereby enter a final certification of the collective described as follows: "Present and former hourly dump truck drivers who worked for Defendant at any time from October 13, 2017 to present."

## APPROVAL OF THE SETTLEMENT AGREEMENT

Where the litigation arises from a private enforcement action under the Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward—specifically, a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Knox v. Jones Group*, No. 15-cv-1738, 2017 WL 3834929 at *1 (S.D. Ind. Aug. 31, 2017).

The Court, therefore, must perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. Typically, courts rely on the adversarial nature of a litigation FLSA case resulting in settlement as indicium of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement in order to promote the policy of encouraging settlement in litigation. Based on the contested nature of this litigation and the quality of the settlement, this Court concludes that the settlement is a reasonable resolution of a *bona fide* dispute in contested litigation and approves the Settlement Agreement.

  **A.** **The proposed settlement is a product of contested litigation.**

The settlement is a result of contested litigation given the fact that the settlement has been reached in the context of this lawsuit. The Parties had a full opportunity to analyze the pertinent factual and legal issues and assess the strengths and weaknesses of the claims and defenses at issue in this case. For these reasons, the Court concludes that the proposed settlement is the product of contested litigation.

  **B.** **The proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute between the parties.**

The second prong of the Court's settlement approval inquiry is two-fold. First, the Court must confirm the existence of a *bona fide* dispute between the parties. Here, Named Plaintiff alleged, generally, that Indy Transport has been systematically underpaying wages and overtime wages to Named Plaintiff and similarly situated dump truck drivers in two ways.

First, Named Plaintiff alleged that Defendant pays its dump truck drivers at an hourly rate of pay, but Defendant has been substantially underpaying wages to all dump truck drivers by failing to pay on a continuous workday basis. Second, Named Plaintiff alleged that Defendant is and has been underpaying overtime compensation to its hourly-paid drivers on a systematic, class-wide basis as a result of an unlawful practice by which Defendant is 1) failing to include work hours it calls "Non-Prod Time" as work hours included in the determination of whether or not dump truck drivers worked overtime (more than 40 hours) in a work week, and 2) paying a very small amount of money without stating the number of hours worked in the category of "Non-Prod Time," but failing to include that "Non-Prod Time" wage in the calculation of employees' regular rates of pay and, in so doing, failing to include all earned wages in its calculation of its employees' overtime rate of pay.

Defendant denied any FLSA violations, any Indiana Wage Claims Statute violations, and

that it has been systematically underpaying wages and overtime wages to this plaintiff or any other dump truck drivers. First, Defendant denied that it has failed to pay any driver on a continuous workday basis. Defendant's drivers record their own time, including signing off on the time that they record each day. Second, Defendant denied wrongdoing associated with its practice of paying drivers separate hourly and overtime rates based upon separate types of work performed by the drivers.

Defendant also asserted various additional defenses, including but not limited to, a statute of limitations bar for some claims; denied that any violations of the FLSA were willful; asserted that any failure to pay Named Plaintiff or any Opt-In Plaintiff overtime was not compensable under the FLSA because it was for *de minimis* time; and asserted that any claims asserted by Named Plaintiff or any Opt-In Plaintiff was barred because the work performed falls within exemptions, exclusions, exceptions, or credits provided for in Section 7 of the FLSA, 29 U.S.C. § 207, including but not necessarily limited to, those seen in 29 U.S.C. § 207(e)(5)-(6)-(7) and 29 U.S.C. § 207(g)(2).

Prior to the Court-ordered mediation on September 29, 2021, Defendant produced to Named Plaintiff's counsel all time and pay records for Named Plaintiff and the four Opt-In Plaintiffs that Defendant has in its possession, custody, and control. If this matter were not resolved by settlement, the Parties would have continued to engage in costly and time-consuming litigation. This procedural posture demonstrates a *bona fide* dispute between the parties. *See, e.g., Beckwith v. Planet Forward, LLC*, 2019 WL 588178, at *2 (N.D. Ind. Feb. 13, 2019) (finding a *bona fide* dispute even when settlement came in early stages of litigation where "litigating this case to its conclusion on the merits would likely entail considerable time and expense.").

Second, the Court must determine that the proposed settlement is fair and reasonable. Courts will evaluate whether the "settlement agreement reflects a reasonable compromise of

disputed issues, rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Gallant v. Arrow Consultation Services, Inc.*, No. 1:19-cv-00925-SEB-MPB, 2020 WL 2113399, at *2 (S.D. Ind. May 4, 2020). Here, as mentioned above, Defendant produced to Named Plaintiff's counsel all time and pay records for Named Plaintiff and the four Opt-In Plaintiffs that Defendant has in its possession, custody, and control.

In addition, Plaintiffs are represented by experienced class action and FLSA counsel and Defendant is represented by the large and established firm of Taft Stettinius & Hollister LLP. Negotiations have been at arm's length, with no hint of collusion, and the settlement is being advanced as a fair and reasonable resolution by the experienced counsel for both sides. Plaintiffs have determined and agreed that the value of an immediate recovery outweighs the mere possibility of relief after long and expensive litigation. Accordingly, the settlement is "fair, adequate and reasonable in light of the risk and expense of further litigation." *Id.* ("Normally, a settlement is approved where it is the result of 'contentious arm's length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.") (*quoting Campbell v. Advantage Sales & Mktg. LLC*, No. 1:09-cv-01430-LJM, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012).

## CONCLUSION

The Parties reached this settlement as a result of contested litigation and it resolves a *bona fide dispute* between them. The Parties engaged in the exchange and analysis of pertinent

information, and resolved the issues between them. The settlement is fair and reasonable in that it resolves a dispute at a stage in the litigation where the expense and stress of highly contested and protracted litigation can be avoided.

For these reasons, the Court **GRANTS** the Parties Joint Motion (Doc. 43); **APPROVES** the Settlement Agreement (Doc. 43-1) and its terms as fair, reasonable, and sufficient; and **DISMISSES** the Complaint with prejudice and in full and final discharge of any and all of Plaintiffs' released claims, but with the Court retaining jurisdiction to enforce the terms of the Settlement Agreement. The Court further **APPROVES** the requested attorneys' fee award to Plaintiffs' counsel and directs that the gross settlement amount be distributed in accordance with the terms of the Settlement Agreement (Doc. 43-1).

SO ORDERED.

DATE: 12/1/2021

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution to all ECF-registered counsel of record.